**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ERICA L. LORAH-RODRIGUEZ INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF LUIS M. RODRIGUEZ, JR., | : | **CIVIL ACTION** |
| Plaintiff, | : | **No. 5:25-cv-05226-JMG** |
| v. | : | **JURY TRIAL DEMANDED** |
| CARY L. ZAMILSKI, | : | |
| Defendant. | | |

**ORDER**

AND NOW on this ____________ day of ____________, 2026, upon consideration of the Defendant, Cary Zamilski's Response in Opposition to Plaintiff's Motion in Limine to Exclude Toxicology Report and Claims of Drug Use by Luis Rodriguez, it is hereby **ORDERED** and **DECREED** that said Motion is **DENIED**.

BY THE COURT:

______________________________

**John M. Gallagher, J.**

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ERICA L. LORAH-RODRIGUEZ INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF LUIS M. RODRIGUEZ, JR., | : | **CIVIL ACTION** |
| Plaintiff, | : | **No. 5:25-cv-05226-JMG** |
| v. | : | **JURY TRIAL DEMANDED** |
| CARY L. ZAMILSKI, | : | |
| Defendant. | | |

**DEFENDANT, CARY L. ZAMILSKI'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE TOXICOLOGY REPORT AND CLAIMS OF DRUG USE BY LUIS RODRIGUEZ**

Defendant, Cary L. Zamilski, by and through his attorneys, Post & Schell, P.C., hereby files the within Defendant's Response in Opposition to Plaintiff's Motion In Limine to Exclude Toxicology Report and Claims of Drug Use by Luis Rodriguez, and presents the following:

1. Luis Rodriguez's Toxicology Report and Claims of Drug Use are relevant and should not be excluded, as they speak to his future earning capacity.

2. The Court is vested with the broad inherent authority to rule on motions in limine prior to trial. *See Luce v. United States*, 469 U.S. 38, 41 (1984); *In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 260 (3d Cir. 1983), rev'd on other grounds sub nom., *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) (the court exercises its discretion to rule in limine on evidentiary issues "in appropriate cases").

3. Courts may exercise this discretion in order to ensure that juries are not exposed to unfairly prejudicial, confusing or irrelevant evidence. *United States v. Romano*, 849 F. 2d 812, 815 (3d Cir. 1988). Courts may also do so in order to "narrow the evidentiary issues for trial and to

eliminate unnecessary trial interruptions." *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990).

4. Motions in limine often present issues for which final decision is best reserved for a specific trial situation. *See cf. Luce v. United States*, 469 U.S. 38, 41-42 (1984) (holding that criminal defendant must testify to preserve claim of improper impeachment with prior conviction).

5. Under Fed. R. Evid. 401, evidence is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' [Therefore] 'It follows that evidence is irrelevant only when it has no tendency to prove the fact. *See Frank v. County of Hudson*, 924 F.Supp. 620, 626 (D.N.J. 1996) (citing *Spain v. Gallegos*, 26 F.3d 439, 452 (3d Cir.1994).

6. Thus Rule 401, while giving judges great freedom to admit evidence, diminishes substantially their authority to exclude evidence as irrelevant.'" *Id*.

7. Fed. R. Evid. 402 expressly provides that all "[r]elevant evidence will be admissible unless the rules of evidence provide to the contrary." *United States v. Sriyuth*, 98 F.3d 739, 745 (3d Cir.1996).

8. Fed. R. Evid. 403 provides an exception to Rule 401 and Rule 402, stating: “Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.” Fed. R. Evid. 403.

9. The United States Court of Appeals for the Third Circuit has cautioned against such preliminary and wholesale exclusion of evidence, noting that it has "made clear that rulings

excluding evidence on Rule 403 grounds should rarely be made in limine." *Walden v. Georgia-Pacific Corp*., 126 F.3d 506, 518 n. 10 (3d Cir. 1997).

10. Third Circuit Court's have stated that they "cannot fairly ascertain the potential relevance of evidence for Rule 403 purposes until it has a full record relevant to the putatively objectionable evidence." *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 859 (3d Cir. 1990); *see also In re Diet Drugs Products Liability Litigation*, 369 F.3d 293, 314 (3d Cir. 2004).

11. "Where permanent injury is involved, the whole span of life must be considered. Has the economic horizon of the disabled person been shortened because of the injury sustained as a result of the tortfeasor's negligence? That is the test." *See Bochar v. J.B. Martin Motors*, 97 A.2d 813 (1953).

12. In order for the jury to award damages for loss of future earnings, they must consider the decedent's past living habits, work experience and general health. *Dunsmore v. Centinaro*, C.A. No. 1992 WL 30462, at 2, 1992 U.S. Dist. LEXIS 1819 (E.D. Pa. Feb. 13, 1992); *Smith v. Southland Corp.*, 738 F. Supp 923, 926 (E.D. Pa. 1990).

13. Pennsylvania Courts have historically stated that the fact of intoxication is admissible if it reasonably establishes a degree of intoxication which proves unfitness to drive. *See Fisher v. Dye*, 386 Pa. 141, 125 A.2d 472, 476 (Pa. 1956); *Billow v. Farmers Trust Co.*, 438 Pa. 514, 266 A.2d 92, 93 (1970).

14. In *Coughlin v. Massaquoi*, the Court held that an expert's thorough testimony on the effects of a given BAC will overcome the prejudice that occurs by introducing that BAC. *Coughlin v. Massaquoi*, 170 A.3d 399 (Pa. 2017).

15. Mr. Rodriguez's toxicology report was positive for 2.2Ng/ML of THC, the byproduct of marijuana. Defense expert, Shaun Carstairs, MD opines:

> "Delta-9-tetrahydrocannabinol (D9-THC) is the primary psychoactive constituent of marijuana (cannabis), responsible for the characteristic euphoric, perceptual, and cognitive effects that impair safe vehicle operation. Extensive peer-reviewed literature in forensic toxicology and traffic safety, including controlled driving simulator and on-road studies, reports that blood D9-THC concentrations in the range of 2 to 5 ng/mL are frequently associated with substantial driving impairment, particularly in occasional or infrequent users who lack significant tolerance. These levels correlate with measurable deficits such as increased standard deviation of lateral position (SDLP), slower reaction times, and poorer divided attention performance, all validated markers of impaired driving. The decedent's postmortem blood concentration of D9-THC at 2.2 ng/mL is squarely within this established impairment range and is consistent with recent cannabis use (e.g., within 1-4 hours of inhalation), rendering it highly indicative of probable psychomotor impairment at the time of the fatal collision…. Thus, the 2.2 ng/mL postmortem level reliably approximates the antemortem concentration, evidencing active intoxication near the crash time rather than a degradation artifact… Collectively, the data support the likelihood that the decedent was likely to have been impaired by cannabis, materially contributing to the inability to avoid the left-turning vehicle."
>
> *See* Dr. Carstairs Report attached hereto as Exhibit "A" pp. 3-4.

16. Dr. Carstairs concludes, "Given the known psychomotor and attentional effects of THC, and the modest degree of postmortem redistribution reported for THC and other cannabinoids, I believe that the decedent was likely experiencing some degree of cannabis-related impairment at or near the time of the collision, which likely contributed to the crash." *Id*. at p. 4.

17. Dr. Wayne Ross, Plaintiff's expert, refutes Dr. Carstairs opinion, suggesting that "At [2.2ng/mL], one cannot distinguish between recent and chronic usage." *See* Plaintiff's Motion at ¶13.

18. This is a classic example of divergent expert opinions, both based on medical/scientific literature, the credibility of which must be decided by the jury.

19. The "reliability and believability of expert testimony is exclusively for the jury to decide." *See United States ex rel. Druding v. Druding*, 952 F.3d 89 (3d Cir. 2020) *(*citing *United States v. Paulus*, 894 F.3d 267, 277 (6th Cir. 2018)).

20. Plaintiff erroneously claims that Mr. Rodriguez did not display indicia of intoxication. Id. at ¶10. In fact, Brendon Hanisko, a fellow motorist and the only unbiased and uninterested witness deposed, testified that Mr. Rodriguez "cut in front of us" … [and] was revving out a little bit." *See* Hanisko testimony attached hereto as Exhibit "B" at 11:4-13:4.

21. Hanisko testified that "Once [Mr. Rodriguez] got in front of us he started to speed up quite a bit. Again, I'm terrible at estimating speeds, but he was going fast enough that if traffic stopped I would be going that fast if traffic was stopped in a lane next to me. I wouldn't have been traveling that fast…. He was obviously moving faster than the flow of traffic…" *Id.* at 20:18-21:19.

22. Hanisko estimates that Mr. Rodriguez was traveling between 50-55 mph (the speed limit was 40 mph and, importantly, Defendant's liability expert opines that Mr. Rodriguez accelerated to s a speed of approximately 55 mph), was actively accelerating before the accident, and was traveling in a manner that was "unsafe". *Id*. at 21:20-22:22, 31:23-32:10.

23. It is disingenuous for Plaintiff to claim that there was no evidence of intoxication when the only uninterest witness who gave testimony in this case, swore under oath that Mr. Rodriguez was speeding, driving too fast for conditions, cut him off, accelerated inappropriately, and was driving unsafe.

24. Any one of these snippets of testimony, alone, may amount to evidence of impairment and, taken together, demonstrate, as Dr. Carstairs opines that Mr. Rodriguez was impaired at the time of the accident.

25. The probative value of Luis Rodriguez's Toxicology Report and claims of drug use goes directly to the questions and issues above and is not substantially outweighed by any prejudice.

WHEREFORE, Defendant Cary L. Zamilski respectfully requests this Honorable Court to deny Plaintiff's Motion in Limine to Exclude the Toxicology Report and Claims of Drug Use by Luis Rodriguez.

**POST & SCHELL, P.C.**

**BY**: ______________________________

**DATED:** August 26, 2026

MARC H. PERRY, ESQUIRE
ATTY. I.D. # 68610
EMAIL: mperry@postschell.com
JOEL H. FEIGENBAUM, ESQUIRE
ATTY. I.D. # 315866
EMAIL: jfeigenbaum@postschell.com
ATTORNEY FOR DEFENDANT,
CARY L. ZAMILSKI
3 LOGAN SQUARE, 24TH FLOOR
1717 ARCH STREET
PHILADELPHIA, PA 19103
TELEPHONE: 215-587-1000

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ERICA L. LORAH-RODRIGUEZ INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF LUIS M. RODRIGUEZ, JR., | : | **CIVIL ACTION** |
| Plaintiff, | : | **No. 5:25-cv-05226-JMG** |
| v. | : | **JURY TRIAL DEMANDED** |
| CARY L. ZAMILSKI, | : | |
| Defendant. | | |

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and accurate copy of the foregoing was served upon all counsel of record via ECF filing.

**POST & SCHELL, P.C.**

**BY**: ______________________

**DATED:** August 26, 2026

MARC H. PERRY, ESQUIRE
ATTY. I.D. # 68610
EMAIL: mperry@postschell.com
JOEL H. FEIGENBAUM, ESQUIRE
ATTY. I.D. # 315866
EMAIL: jfeigenbaum@postschell.com
ATTORNEY FOR DEFENDANT,
CARY L. ZAMILSKI
3 LOGAN SQUARE, 24TH FLOOR
1717 ARCH STREET
PHILADELPHIA, PA 19103
TELEPHONE: 215-587-1000